**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FRANK PETERSON,

      **Plaintiff,**

      **v.**

ALAN M. HANTMAN,
**Architect of the Capitol,**
**Office of the Architect of the Capitol,**

      **Defendant.**

**Civil Action No. 02-2552 (RWR/JMF)**

**MEMORANDUM OPINION**

This case has been referred to me by Judge Roberts for resolution of all discovery

disputes pursuant to LCvR 72.2(a).  Ready for resolution is Plaintiff's Motion for Discovery

Sanctions ("Plains. Mot.").  For the reasons set forth below, plaintiff's motion will be denied.

**BACKGROUND**

Frank Peterson ("Peterson" or "plaintiff"), an African-American, claims that the Architect

of the Capitol ("AOC" or "defendant") subjected him to a hostile work environment and denied

him a promotion because of his race and in retaliation for complaining of the discrimination.

Complaint at 1.  Plaintiff sued the AOC under Title IV of the Congressional Accountability Act

of 1995, 2 U.S.C.A. § 1311m 1317(a)(1) ("CAA").[1]  Id.  Defendant claims that Peterson was not

---

[1] The CAA affords congressional employees, including employees of the AOC, the same
rights and protections against discriminatory and retaliatory behavior as are guaranteed non-
congressional employees under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e-
2.  All references to the United States Code or the Code of Federal Regulations are to the
electronic versions that appear in Westlaw or Lexis.

qualified for the promotion he sought and that he was incapable of assuming additional duties

without putting himself and others at risk of injury. Defendant's Motion for Independent

Examinations, for an Extension of Time for Discovery and for the Disclosure of Expert

Testimony, and Memorandum in Support Thereof at 2-3.

## DISCUSSION

I.    Plaintiff's Motion for Discovery Sanctions

Plaintiff contends that defendant, through its refusal to produce documents and respond to

interrogatories, has delayed the progress of this case for over a year and a half. Plains. Mot. at 1.

Plaintiff argues that defendant should be sanctioned for its behavior in two ways: 1) defendant

should pay the expenses incurred by plaintiff as a result of having to file two motions to compel

and 2) at trial, defendant should be precluded from using any undisclosed evidence relating to its

defense that plaintiff is "unsafe" in the workplace. Id.

Plaintiff argues generally that defendant failed to respond in a timely and adequate

fashion to plaintiff's discovery requests.  Plaintiff propounded his first set of discovery requests

on October 16, 2003.  According to plaintiff, despite repeated requests, defendant did not

respond until January 12, 2004, "nearly two months out of time." Id. at 2.  Plaintiff further claims

that defendant's January 12, 2004 response did not include the requested documents and that the

answers to the interrogatories were inadequate. Id.  Plaintiff also argues that defendant was late

in responding to his second set of discovery requests and that once again, the responses were

inadequate. Id.

Plaintiff also makes two specific allegations.  First, plaintiff argues that, in violation of

the jointly filed stipulation on discovery issues, defendant failed to turn over the requested

accident reports. Id. at 3.  Plaintiff contends that defendant promised to contact plaintiff by July 13, 2004 but that on July 13, defense counsel indicated he needed until July 19, and that as of the date of plaintiff's motion for discovery sanctions, plaintiff's counsel had not yet received any information as to these reports. Id. at 4.  Second, plaintiff claims that defendant has not "cooperated" in scheduling three outstanding depositions, including that of Alan Harvey. Id. at 4.

Finally, plaintiff's counsel indicates that she told defense counsel that, if the outstanding discovery obligations were not fulfilled by July 30, 2004, she would file a motion for sanctions. Id.  Plaintiff's counsel then acknowledges that she did receive a letter from defense counsel on July 29, 2004, but the reasons offered by defense counsel for the delay in responding to plaintiff's discovery requests were inexcusable. Id. at 4-5.

Defendant argues that plaintiff's motion for discovery sanctions lacks a good faith basis and is rooted primarily in plaintiff's failure to discover any information that supports his case. Defendant's Memorandum in Opposition to Plaintiff's Motion for Sanctions ("Defs. Opp.") at 2-3.  Defendant also argues that the parties have jointly agreed to extensions of the discovery deadlines in this case and that the court granted defendant's request for an extension of time until August 2, 2004 to complete discovery. Id. at 3.

Defendant also argues that, while there may have been disputes over discovery, these disputes were not baseless. Id.  Specifically, defendant notes that when plaintiff requested information about the "Air Conditioning Division," that information was turned over even though plaintiff works in the "Maintenance Division" but used to work in the "Air Conditioning Division." Id.  Thus, defendant claims that it complied with the request and that it was plaintiff's failure to appropriately word the discovery request that led to the release of information that

plaintiff ultimately did not want. Id. at 4.

Addressing the issue of the requested accident reports, defendant claims that they were provided on August 2, 2004. Id.  Defendant also argues that the reports plaintiff originally requested were those relating to an internal working group within the Architect of the Capitol and not the routine accident reports made by employees during the normal course of business. Id. Thus, defendant argues that plaintiff cannot now complain that defendant should be sanctioned for its failure to produce materials that were not originally requested. Id.

As to the scheduling of the deposition of Alan Harvey, defendant argues that plaintiff failed to adequately explain to the court that the reason the deposition had to be rescheduled was because the witness was in the hospital. Id. at 5.

In terms of failing to provide plaintiff with information relating to defendant's "unsafe" defense, defendant argues that this is simply not true. Id.  According to defendant, defendant explained to plaintiff that several other employees expressed concerns about plaintiff's on-the-job safety. Id.  Defendant also claims that plaintiff had every opportunity to question Robert Davis, one of the employees identified by plaintiff as having concerns about plaintiff's safety record. Id.

Finally, defendant notes that plaintiff gave defendant until July 30, 2004 and that, while preparing the current motion for discovery sanctions, plaintiff received defendant's request for an extension until August 2, 2004, which the court, in fact, granted. Id. at 6.

II.     Legal Standard

Under Federal Rule of Civil Procedure 37, a court may sanction a party that fails to comply with a discovery order. Fed. R. Civ. P. 37(b)(2).  The Federal Rules authorize a wide

4

array of sanctions, including staying the proceedings pending compliance with a court order,
taking certain facts as established, prohibiting a party from introducing certain matters into
evidence, finding a party in contempt of court, and dismissing the action or any part thereof.
See id.  The court also has the authority to award reasonable expenses, including attorney's fees,
caused by the failure to obey a court order "unless the court finds that the failure was
substantially justified or that other circumstances make an award of expenses unjust." Id.
Similarly, under Rule 37(c)(1), the court may impose sanctions on a party that, without
substantial justification, fails to disclose information required by Rule 26(a) or 26(e)(1). Fed. R.
Civ. P. 37(c)(1).

      According to the Supreme Court, a party meets the "substantially justified" standard when
there is a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the
motion. Pierce v. Underwood, 487 U.S. 552, 565 (1988).  A party's actions are substantially
justified if the issue presented is one that "could engender a responsible difference of opinion
among conscientious, diligent[,] but reasonable advocates." Athridge v. Aetna Cas. & Sur. Co.,
184 F.R.D. 200, 205 (D.D.C. 1998) (citations omitted).

      District courts are entrusted with broad discretion regarding whether to impose sanctions
under Rule 37, and the nature of the sanctions to be imposed. Bonds v. District of Columbia, 93
F.3d 801, 808 (D.C. Cir. 1996); Sturgis v. Am. Ass'n of Retired Persons, 1993 WL 518447 (D.C.
Cir. 1993) (per curiam); Steffan v. Cheney, 920 F.2d 74, 75 (D.C. Cir. 1990)).  However, the
court's discretion is not without limits.  Indeed, this Circuit has emphasized any sanctions
awarded must be proportional to the underlying offense. Bonds, 93 F.3d at 808.

III.    Analysis

A.     The Length of the Discovery Period

Discovery in this case has, as both parties have acknowledged, been delayed on numerous occasions.  However, apart from the current motion for discovery sanctions, it appears as though the parties have been able to work together to complete discovery and that when a motion for an extension was made, it was, in most cases, sought with the consent of the opposing party.

On February 20, 2004, defendant moved to extend the time within which to complete discovery.  Judge Roberts granted this motion on February 23, 2004.  On March 26, 2004, defendant again moved for an extension of time to complete discovery, which was granted by Judge Roberts on April 8, 2004.  On April 5, 2004, plaintiff, with defendant's consent, moved for an extension of time to respond to defendant's motion for independent examinations and for an extension of time to disclose expert testimony.  That motion was granted by Judge Roberts on April 8, 2004.  On April 20, 2004, plaintiff again moved, again with defendant's consent, for an extension of time to respond to defendant's motion for independent examinations and for an extension of time to disclose expert testimony.  That motion was granted by Judge Roberts on April 21, 2004.  On June 9, 2004, following the hearing before me, plaintiff filed a consent motion for an extension of time to file the joint stipulation regarding discovery issues.  I granted that motion on June 10, 2004.  On June 22, 2004, plaintiff filed a consent motion for an enlargement of time to complete discovery.  That motion was granted by Judge Roberts on June 23, 2004.

Finally, on July 30, 2004, defendant filed a motion for an extension of time to respond to plaintiff's discovery requests.  In support of his motion, defense counsel cited the fact that officials at the Architect of the Capitol have been otherwise busy with security-related duties and

therefore had not responded to counsel's request for information in this case as well as the fact that counsel was himself "inundated by the obligation to prepare a number of filings and by other responsibilities in a demanding civil litigation caseload." Defendant's Motion for an Extension of Time to Respond to Plaintiff's Discovery Requests, and Memorandum in Support Thereof at 1.  I granted defendant's motion on August 11, 2004.

Plaintiff cites Alexander v. Interim Legal Servs., Nos. CIV.A. 96-2029, CIV.A. 96-2063, 1997 WL 732432 (D.D.C. Nov. 6, 1997), for the proposition that a "tardy response will not excuse [a party] from paying expenses" of the aggrieved party. Mot. at 5 (citing Alexander, 1997 WL 732432, at *2).  However, in that case, I awarded sanctions after finding that the party making an untimely response had failed to move for an enlargement of time and had "never tendered a legitimate objection" to defendant's request for production of documents. Alexander, 1997 WL 732432, at *2.  In this case, the situation is quite different.  It is clear from the docket that both parties sought extensions of the discovery period and the delay is not, as plaintiff would characterize it, based solely on defendant's refusal to produce documents and respond to interrogatories.  In fact, unlike the situation in Alexander, defense counsel informed plaintiff's counsel by fax prior to the close of discovery of his need for a brief enlargement of time and provided a detailed explanation of his reasons for seeking the enlargement.

      B.      Whether Defendant's Position Was Substantially Justified

            1.      Personnel Files

Plaintiff initially sought personnel files, including data on race and ethnicity, for all employees in the Air Conditioning Division. May 17, 2004 Transcript ("Tr.") at 6, 17.  However, it later became apparent to plaintiff that employees who work during the daytime are part of the

Air Conditioning Division but employees who perform similar duties during the evening are part of the Maintenance Division.  At the hearing, defendant noted that it had responded to plaintiff's request as it was specifically worded, and therefore only turned over information relating to employees of the Air Conditioning Division. Id. at 18.  Following plaintiff's modification of his original request, defendant agreed to turn over records for both the Maintenance and Air Conditioning Divisions. Id. at 7.

In drafting document requests, it is the party seeking discovery that bears the burden of fashioning the requests appropriately.  In this instance, plaintiff misworded his original request, and defendant merely responded to the letter of plaintiff's request.  This is hardly sanctionable behavior.

2.    Employee EEO Files

Plaintiff also seeks those EEO files that contain complaints filed by workers from both the Air Conditioning and Maintenance Divisions. Id. at 8.  At the hearing, both the Assistant United States Attorney and counsel for the Office of the Architect noted that, in the past, it had been extremely difficult to obtain such records from the Architect of the Capitol and that the position of the U.S. Attorney's office was not necessarily that of the Architect of the Capitol. Id. at 10-11.

This is not the first time this court has grappled with the discoverability of documents produced as a result of proceedings, both formal and informal, governed by the Congressional Accountability Act.  As I stated at the hearing,

> ... there are two decisions.  One is called Derek Waters versus the U.S. Capitol Police and the other was called Banks versus I guess the Senate Sergeant of Arms.  I had to grapple with the confidentiality provisions of the Congressional Accountability Act

because it creates a very different statutory scheme and that
statutory scheme makes these files confidential.

In other words, the Congressional Accountability Act sets
up two systems. One system is self-inclusive. You begin with
mediation, you go to conciliation. If that doesn't work out, you go
through an agency review and that is reviewed, I believe, in the
Court of Claims. Then there's a second system. If you go through
mediation and you jump ship, as it were, and you go to the District
Court, it's an entirely different situation.

The problem is the provision in the statute as to the
confidentiality is very different from Title [VII], it's not like Title
[VII] when you create an administrative record and that becomes,
after all, the record that of course will be used by the court.

Id. at 8-9.

Ultimately, defendant's objection to the release of these records was based both on a

relevancy objection, in that the other employees are not similarly situated to plaintiff, as well as

an objection based on the Congressional Accountability Act, in that the documents are, as stated

in the statute, "strictly confidential." Id. at 15. While plaintiff never thereafter pressed the point,

defendant's position in resisting this discovery was certainly justified, as I indicated at the

hearing.

C.    Information About Employee Participation in Protected Activity Including Union
      Activity

Plaintiff seeks documents relating to employee participation in protected activity. Id. at

20. Defendant objected to this request on the grounds that the information might permit the trier

of fact to deduce defendant's current intentions from what might be characterized as prior bad

acts, which is specifically prohibited under the Federal Rules of Evidence. Id. at 27. Whether the

information plaintiff seeks is in fact discoverable was discussed in length at the hearing. At one

point, the parties appeared to agree to a stipulation that, at trial, defendant would not offer

evidence that it was not the type of employer that discriminated, id. at 28, but ultimately, I never

ruled on the matter, at the hearing or thereafter, because no one pressed the issue.  Here too, as with defendant's position on the discoverability of employee EEO files, both parties took reasonable, defensible, positions.  That there is no clear-cut answer makes defendant's objections substantially justified and, therefore, sanctions are inappropriate.

      D.    <u>Information Relating to Work-Place Safety</u>

Plaintiff seeks information relating to on-the-job accidents. <u>Id.</u> at 39.  Defendant objects on the grounds that the information sought can only be produced by the Department of Labor and that defendant has turned over everything that it could. <u>Id.</u> at 40-41.  Here, too, I declined to rule at the hearing and noted that if need be, plaintiff would have to subpoena those records directly from the Department of Labor. <u>Id.</u> at 68.  If the documents are technically within the custody of the DOL, there is nothing more for defendant to do.  In this instance, defendant is not objecting to the discovery per se, but simply objecting to being compelled to produce what it does not have.  Such an objection is certainly a legitimate one.

      E.    <u>Work Assignments</u>

Plaintiff seeks the work assignments for plaintiff and for other employees. <u>Id.</u> at 44.  Defendant did not object to the relevance of these documents but merely indicated that the request was oppressive given the voluminous nature of the documents. <u>Id.</u> at 47.  In other words, defendant never objected to making these documents available to plaintiff and reiterated once more at the hearing that the documents had been made available to plaintiff. <u>Id.</u> at 48.

      F.    <u>Information Relating to Plaintiff's Non-Receipt of a COLA</u>

Plaintiff seeks information relating to plaintiff's non-receipt of a COLA. <u>Id.</u> at 48.  As I noted at the hearing, defendant indicated that "the reason why [plaintiff] didn't get a COLA had

nothing to do with the performance of his duties, it had to do with the absence of a statutory entitlement to it as a matter of congressional determination." Id. at 51.  This argument, relating to a question of statutory interpretation, is similar in nature to that made by defendant in relation to the EEO files and to the information about employee participation in protected activity.  Again, that there is a "genuine dispute" as to these areas of the law renders defendant's stance substantially justified.  See Pierce v. Underwood, 487 U.S. at 565.

## CONCLUSION

"If there is an absence of controlling authority, and the issue presented is one not free from doubt and could engender a responsible difference of opinion among conscientious, diligent but reasonable advocates, then the opposing positions taken by them are substantially justified." Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. at 205 (citations omitted).  In each of the above-described areas, defendant's position was reasonable and without a doubt, substantially justified. The imposition of any type of sanction in this case is, therefore, inappropriate.  Plaintiff's motion will be denied in its entirety.

An Order accompanies this Memorandum Opinion.


_____
JOHN M. FACCIOLA
Dated:                              UNITED STATES MAGISTRATE JUDGE